OPINION OF THE COURT
 

 Levine, J.
 

 Based on events that allegedly occurred at the complaining witness’s apartment over a 13-hour period from the evening of February 27 to the morning of February 28, 1995, defendant was indicted on single counts of burglary in the first degree and kidnaping in the second degree, five counts of sodomy in the first degree and two counts of sexual abuse in the first degree. Defendant was also indicted on one count of burglary in the second degree allegedly committed on April 7, 1995, and
 
 *559
 
 one count of menacing in the second degree allegedly committed between February 27 and April 7, 1995.
 

 The direct evidence of defendant’s commission of the acts constituting the crimes charged in the indictment came from the testimony of the complaining witness. He and defendant were former lovers who had lived together in the victim’s apartment until early February 1995. Some acrimony between them followed. The complaining witness testified that upon returning home during the evening of February 27, 1995, he found that defendant had entered his apartment without permission, waiting for his arrival.
 

 The witness then described defendant’s forcible restraint, preventing flight, and commission of separate acts of forcible sodomy and sexual abuse that evening, and defendant’s resumption of that conduct the following morning. He also described defendant’s threatening telephone calls over the next several weeks, until defendant reentered his apartment on April 7, after which he was arrested. The complainant’s testimony was sharply attacked on cross-examination. Specifically, he was pressed as to why he remained in his apartment until the morning of February 28, rather than fleeing and promptly contacting the police when defendant passed out from drinking during the evening of February 27.
 

 Jury deliberations extended over two days. At one point the jury sent the court a note indicating inability to “come to any agreement or compromise except on one charge.” Instructed to continue deliberations, they then asked whether they could consider reduced degrees of sodomy and were instructed that they could not. Ultimately, they returned a unanimous verdict convicting defendant of unlawful imprisonment in the second degree (Penal Law § 135.05), one count of burglary in the second degree (Penal Law § 140.25), two counts of sodomy in the first degree (Penal Law § 130.50) and one count of sexual abuse in the first degree (Penal Law § 130.65) regarding the events of February 27-28; menacing in the second degree (Penal Law § 120.14) with respect to the period between February 28 and April 7; and criminal trespass in the second degree (Penal Law § 140.15) for the April 7 incident. The jury acquitted defendant on all other counts, including the three remaining counts of sodomy in the first degree and the one remaining count of sexual abuse in the first degree, allegedly committed over the same time frame of February 27-28.
 

 On appeal, the Appellate Division affirmed defendant’s conviction in all respects (261 AD2d 182). It found that the
 
 *560
 
 verdict was not against the weight of the evidence..In doing so, the court rejected defendant’s contention that, in exercising its statutory weight of the evidence review responsibility
 
 (see,
 
 CPL 470.15 [5];
 
 People v Bleakley,
 
 69 NY2d 490), it was required to take into account the implied inconsistency of the mixed verdict in terms of the jury’s apparent crediting of the complaining witness’s testimony concerning the sex crimes on which they voted to convict, and rejection of his testimony concerning those crimes on which they voted to acquit. A Judge of this Court granted leave to appeal, and we affirm.
 

 As set forth in CPL 470.15 (1), an intermediate appellate court “may consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant.” A determination of whether a judgment of conviction is “against the weight of the evidence” is deemed to be on the facts (CPL 470.15 [5]) and is the exclusive province of an intermediate appellate court
 
 (cf,
 
 CPL 450.90 [Court of Appeals]; CPL 330.30 [trial courts]).
 

 In
 
 People v Bleakley
 
 (69 NY2d 490,
 
 supra),
 
 this Court held that “it is reversible error when the Appellate Division manifestly avoids its exclusive statutory authority to review the weight of the evidence in criminal cases”
 
 (id.,
 
 at 492). The Court in
 
 Bleakley
 
 articulated the standard to be employed by an intermediate appellate court in conducting weight of the evidence review, contrasting this task with legal sufficiency analysis. When assessing sufficiency of the evidence, the “court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial”
 
 (id.,
 
 at 495, citing
 
 Cohen v Hallmark Cards,
 
 45 NY2d 493, 499). By contrast, “[i]f based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, ‘weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony’ ”
 
 (id.,
 
 quoting
 
 People ex rel. MacCracken v Miller,
 
 291 NY 55, 62). As described by the United States Supreme Court, a court reviewing the weight of the evidence must engage in its own de novo review of the evidence, sitting as a “thirteenth juror”
 
 (see, Tibbs v Florida,
 
 457 US 31, 42).
 

 Defendant’s sole argument before us is that the Appellate Division, in performing its statutory function independently
 
 *561
 
 weighing the evidence of defendant’s guilt of the convicted crimes, must take into account the implied inconsistency in a mixed verdict, when a jury’s acquittals and convictions are based on the testimony of the same witness, and there is no reasonable basis in the record to explain the discrepancy in results. In this case defendant argues that, without any distinguishing facts or circumstances upon which to parse out the complainant’s testimony at trial, it must be inferred that the jury unreasonably credited his testimony as to certain events and rejected it as to other acts or events. Therefore, defendant argues, the convictions cannot stand. We disagree.
 

 We find it instructive to begin our analysis with our jurisprudence involving legally inconsistent verdicts on multiple counts. In the seminal case of
 
 People v Tucker
 
 (55 NY2d 1), this Court considered two different approaches to reviewing inconsistent verdicts. The first approach, urged by the defendant in that case, was based essentially upon the very same rationale advanced by defendant here — that the record should be reviewed in toto, in search of some explanation for the apparent inconsistency, “whereupon the reviewing court can determine the logic or illogic of the verdicts and remedy the repugnancy when it exists”
 
 (id,.,
 
 at 6). Under the second approach, adopted by the Court in
 
 Tucker,
 
 a reviewing court would reverse a conviction “only in those instances where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other crime, as charged, for which the guilty verdict was rendered”
 
 (id.,
 
 at 7).
 

 The Court’s reasoning for rejecting the first, more expansive approach to reviewing mixed verdicts was that it would “require [] the court to intrude into the jury’s deliberative process by speculating on how the jury perceived and weighed the evidence”
 
 (id.).
 
 The Court elaborated on why this kind of speculation was inappropriate:
 

 “The problems of second-guessing are compounded by the possibility that the jury has not necessarily acted irrationally, but instead has exercised mercy. When the jury has decided to show lenity to the defendant, an accepted power of the jury, the court should not then undermine the jury’s role and participation by setting aside the verdict”
 
 (id.
 
 [citations omitted]).
 

 The
 
 Tucker
 
 holding was applied in this Court’s decision in
 
 People v Goodfriend
 
 (64 NY2d 695). In
 
 Goodfriend
 
 a defendant
 
 *562
 
 was indicted for first degree rape and two counts of first degree sodomy, all arising out of a single occurrence. He was convicted of only one count of sodomy and acquitted of the two other counts
 
 (see, id.,
 
 at 697). Rejecting the defendant’s argument that the verdict was repugnant, this Court récognized that “defendant’s acquittal on two counts did not necessarily negate an essential element of the remaining count”
 
 (id.).
 
 The Court remarked that defendant’s argument rested on the ground that the jury accepted as true a certain defense that would have been equally applicable to the count of which the defendant was convicted and concluded that “ [t]his type of speculation as to ‘how the jury perceived and weighed the evidence’ and whether it acted ‘irrationally’ was rejected in
 
 Tucker” (id.,
 
 quoting
 
 People v Tucker,
 
 55 NY2d 1, 7,
 
 supra).
 

 Although defendant correctly points out that the role of a court in determining legal repugnancy, as defined in
 
 Tucker,
 
 is different from that of an intermediate appellate court in conducting its weight of the evidence review, the rationale articulated in
 
 Tucker
 
 applies here as well. Just as in the context of a legal repugnancy inquiry, neither logic nor practical analysis requires a weight of evidence reviewing court to conclude that the jury unreasonably credited the complaining witness on some counts and rejected his credibility on others because, as pointed out in
 
 Tucker,
 
 there is always “the possibility that the jury has
 
 not necessarily acted irrationally,
 
 but instead has exercised mercy”
 
 (People v Tucker, supra,
 
 at 7 [emphasis supplied]).
 

 Moreover, in performing its de novo review function as a “thirteenth juror,” there is no good reason why a court should resolve any inconsistency in favor of a defendant rather than the People who, after all, have no right of appellate review of jury acquittals in mixed verdicts. In
 
 United States v Powell
 
 (469 US 57), the United States Supreme Court, going further than we did in
 
 Tucker,
 
 held that even if a verdict is inconsistent to the point of repugnancy, there is no principled basis upon which to require a court to give the defendant the benefit of the consistency:
 

 “[inconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant’s expense. It is equally possible that the jury, convinced of guilt, properly reached its conclu
 
 *563
 
 sion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense”
 
 (id.,
 
 at 65).
 

 For this reason, the Supreme Court has ruled that it is better to leave even a legally inconsistent jury verdict undisturbed
 
 (see, id.
 
 [“For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant’s behest”]). The Court specifically rejected, “as imprudent and unworkable” any rule that would permit criminal defendants to challenge inconsistent verdicts on the ground that the verdict resulted from some error that worked against them rather than being the product of lenity. “Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury’s deliberations that courts generally will not undertake”
 
 (id.,
 
 at 66).
 

 In sum, we are persuaded by the rationale of
 
 Tucker
 
 and
 
 Powell
 
 that we should not require an intermediate appellate court, as a part of its exclusive weight of the evidence review, to assume the basis for any implied inconsistencies in mixed jury verdicts.
 
 *
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed.
 

 *
 

 In so ruling, we do not mean to imply that, under no circumstances may an intermediate appellate court consider jury acquittals in performing weight of the evidence review. Nor should our ruling here be deemed to cast in doubt the propriety of consideration of such acquittals in some instances on legal issues such as the sufficiency of the evidence (see,
 
 People v Yarrell,
 
 75 NY2d 828,
 
 revg for reasons stated by dissent
 
 146 AD2d 819, 821-822) or errors in the admissibility of evidence (see,
 
 People v Osorio,
 
 75 NY2d 80).