Jokes, J.
These cases present the question whether the Appellate Division may, at least without any advance notice, properly telescope a coram nobis application into a summary appeal.
THE HALL CASE
In Hall, the defendant appeals by permission from an order of the Appellate Division, Second Department, which affirmed *549 an order of Supreme Court, Kings County (Barshay, J.), denying Hall’s coram nobis application.
In 1968 Hall and a codefendant pleaded guilty to manslaughter-first in satisfaction of an indictment for murder-first, and to attempted robbery-first in satisfaction of a second indictment for attempted robbery-first, attempted grand larceny-first and assault-first.
In the present coram nobis application Hall contended that he had not been advised of his right to appeal. After a Montgomery hearing Criminal Term found that Hall was not advised and was not aware of his right to appeal from the judgments of conviction. That court further held, however, that Hall was not entitled to the relief sought and accordingly denied the motion for resentence.
On appeal, the Appellate Division affirmed on the ground that “ ‘ [a]ppellant has not effectively demonstrated that he has grounds for appeal (People v. Lynn, 28 N Y 2d 196, 203). The only viable claim raised by him at the Montgomery hearing was a denial of the right to a speedy trial. We have reviewed this claim and conclude that if he were to raise this issue on appeal from the judgment of conviction we would hold that the right to a speedy trial was not violated. ’ ’ ’
Hall’s objective in the present coram nobis application, of course, was to be resentenced for the purpose of taking an appeal from the judgments on the guilty pleas. He argues that on any such appeal he would have viable claims which were not raised by the guilty plea, including speedy trial, excessive sentence, improper acceptance of the plea and perhaps mental incompetency.
The Appellate Division did not dispose of Hall’s appeal on the ground that he did not have a right to appeal under Montgomery and Lynn. Bather it sought to expedite by considering the coram nobis application as though it were an appeal and on that record proceeded to dismiss the appeal for lack of merit, thus telescoping the normal procedures and giving Hall a summary appeal. The more complete course would have been to grant the motion for resentencing on the ground, as found by Criminal Term and apparently accepted in the Appellate Division, that Hall had not been advised nor was he aware of his right to appeal, and that under People v. Lynn (28 N Y 2d 196) *550 he did have a 44 viable ” appealable issue. Then on the resentencing, Hall could have taken a full appeal from the judgments of conviction, based on a complete record with opportunity for full briefing and oral argument. Hall now argues that the sumr mary procedure followed at the Appellate Division, of which neither he nor his counsel had any advance notice, constituted a constitutionally impermissible deprivation of equal protection and due process of law.
THE SANTIAGO CASE
In Santiago, the defendant appeals by permission from an order of the Appellate Division, Second Department, which affirmed an order of Supreme Court, Kings County (Damiani, J.), denying Santiago’s coram nobis application.
In 1957 Santiago pleaded guilty to manslaughter-first in satisfaction of an indictment for murder-first.
In his present coram nobis application Santiago contended that he was not advised of his right to appeal. After a hearing, Criminal Term denied the application on the ground, inter alia, that4 4 it is very difficult for me to find that he had no knowledge of his right to appeal.”
On Santiago’s appeal, the Appellate Division affirmed the order denying the application, but in doing so, held:14 The Criminal Term erred in rejecting defendant’s uncontroverted testimony that he had not been informed of his right to appeal from his 1957 conviction—nor did he know that he had such a right — solely because he had previously been arrested three times in Puerto Rico and twice convicted, after guilty pleas, of misdemeanors in New York. Nevertheless, the order under review need not be reversed. The only 4 viable claim ’ raised by defendant at the Montgomery hearing was his contention that his sentence was excessive. However, we have reviewed his criminal and personal history as set forth in his probation report and if he were to raise this claim on appeal from the judgment of conviction we would find that his sentence was not excessive (People v. Coleman, 30 N Y 2d 582).”
Again in this case, the Appellate Division, apparently conceding that the defendant had a right to a direct appeal, chose summarily to dispose of the only issue which that court thought the defendant could raise on any such appeal. This disposition, of *551 course, was based on the record in the coram nobis proceeding, rather than on a full record on appeal, and was not accompanied by the other aspects of full presentation and ventilation which would have attended a regular appeal. Santiago, like Hall, contends that he has thus been deprived of rights assured him under the Constitution.
In each instance the Appellate Division treated the case as though under applicable law the defendant was entitled to have his right of appeal reinstated. In an entirely understandable attempt to economize time and effort, the court then refused such reinstatement on the ground that the defendant has no meritorious appeal anyway. However commendable in intention we cannot approve such abbreviated procedures.
In one aspect, the adoption of the procedures employed by the Appellate Division here would work a truly significant modification of Montgomery and Lynn. Not only would the petitioner for a writ of error coram nobis have to establish as before that he had not been advised and did not know of his right to appeal and that he would have appealed had he known of it, but in addition he would now have to establish, not as before that he had a viable appealable claim, but that he had a claim on which he could succeed on appeal.
We have sympathy for the proposition that means must be found, and soon, to put an end to the proliferating and seemingly endless procedural opportunities now open to criminal convicts to challenge their convictions and sentences, directly and collaterally, ad infinitum. Assets of time and manpower are now often spent without significant protection to the individuals who have been convicted.
Efforts of our courts in this direction, however well motivated and appealing they may be, to telescope existing procedural rights into summary disposition must assure fundamental procedural protections. Counsel in these cases argue that the summary procedures were unfair since they did not have the full record and in consequence of lack of advance notice did not have an opportunity for full briefing or argument of the issues.
There can be no doubt that a criminal appellant is entitled to a “record of sufficient completeness ” (CPL 460.70, subd. 3; Code Crim. Pro., § 485; Mayer v. City of Chicago, 404 U. S. 189, 193-195; People v. Pride, 3 N Y 2d 545, 549).
*552 Similarly appellate counsel must have an opportunity to brief the issues. In People v. Emmett (25 N Y 2d 354, 356) our court said: “ The fact that the defendant’s appeal may have lacked merit did not, however, justify the Appellate Term’s refusal to allow his counsel an opportunity to prepare and submit a brief. Implicit in the right of a defendant to appeal (see People v. Borum, 8 NY 2d 177) and to have counsel on that appeal (see People v. Hughes, 15 N Y 2d 172; Douglas v. California, 372 U. S. 353) is his right that such counsel be afforded an opportunity to be heard and to submit a brief on the merits of the case. (Cf. Garrison v. Patterson, 391 U. S. 464, 466.) To deny to the defendant’s lawyer on the appeal any opportunity to see or read the record and thereafter present his arguments orally or in a brief negates the effective appeal to which a defendant is entitled.”
In Garrison v. Patterson (391 U. S. 464) it was held that, where an appellate court proposed to combine consideration of whether there exist viable appealable issues with consideration of the same issues on their merits, counsel must be given advance notice. There was no advance warning that the Appellate Division would adopt the procedures followed in these eases.
As a practical matter, we are not prepared at this point to favor adoption of telescoped appellate procedures such as those here employed, attractive as they may appear on the surface, even prospectively with notice and full opportunity for appellate presentation. There would be a substantial risk that, with the prospect that it might blossom into full appellate review, every coram nobis application in the future would be accompanied by an application for a full record at public expense. Responsible counsel could scarcely do otherwise. And obviously briefing in support of the application would become very much more extensive. Instead of address to proof of a Montgomery-Lynn right and the existence of a viable appealable issue, each brief would have to cover all aspects of any appeal. All of this would be set in motion and be under way before there had, for example, been the preliminary, threshold finding that the particular defendant did not know and had not been advised of his right to appeal. The early, expeditious screening disposition of what now amount to applications for leave to appeal would be replaced *553 by more cumbersome, slower moving, fully documented and briefed appeals, and in nearly every case.
Much as one may sympathize with a sense of impatience and recognize the need to increase judicial efficiency, to speed up the judicial process, and to reduce the volume of litigation, we must conclude that full constitutional protection is still to be assured individual convicts. Such assurance in these situations (at least in the absence of procedure refinements promulgated in carefully drafted legislation) would in sum swell the calls on the public treasury as well as increase judicial burden rather than otherwise.
The orders of the Appellate Division in these cases should be reversed, and the cases remitted to Supreme Court, Kings County, for resentencing. To adopt the other alternative offered here, namely, to remit to the Appellate Division for briefing on all issues on the basis of a complete record of the judgment of conviction, would encourage, indeed almost mandate, the ballooning of each similar cor am nobis application into a full-blown appeal.
Chief Judge Fuld and Judges Burke, Breitel, Jasen, Gabrielli and Wachtler concur.
In each case: Order reversed and case remitted to Supreme Court, Kings County, for further proceedings in accordance with the opinion herein.